Date signed July 19, 2006



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| **In re:** | : | |
| **USGen New England, Inc.** | : | **Case no. 03-30465 PM** |
| | | **Chapter 11** |
| | : | |
| **Debtor.** | | |
| **USGen New England, Inc.** | : | |
| **Plaintiff,** | : | |
| | | **Adv. Proc. No. 05-1958** |
| **v.** | : | |
| **Ocean State Power and Ocean State Power II** | : | |
| | : | |
| **Defendants.** | | |

## MEMORANDUM OF DECISION

Plaintiff filed a Motion for Summary Judgment on May 5, 2006 ("Plaintiff's Motion"). Defendants filed a Cross-Motion for Summary Judgment on June 2, 2006 ("Defendants' Motion"). Oppositions and replies were filed in response to both Motions. A hearing was held on the Motions on July 11, 2006. For the reasons stated below, Plaintiff's Motion will be granted and Defendants' Motion will be denied.

The basic facts underlying the Motions are undisputed. Plaintiff and Defendants entered into a contract entitled "Equalization Agreement" on June 28, 2002 (the "Agreement"). Under the Agreement, Defendants agreed to pay an "Equalization Payment" of $1,615,635.50 in equal monthly installments of $31,234.76 per month for sixty months. Defendants made a payment of $187,408.56 representing six months of payments as a security deposit.

Defendants made their first monthly payment under the Agreement on September 3, 2002, and made their last monthly payment on August 3, 2004. After August 3, 2004, Plaintiff applied the security deposit to Defendants' next six monthly payment obligations through February 2005. A demand letter was sent to Defendants by Plaintiff on February 28, 2005, and this adversary proceeding was commenced on September 16, 2005.

The parties entered into the Agreement at approximately the same time as the Plaintiff and Defendants separately entered into negotiated rate agreements with Tennessee Gas Pipeline Company ("Tennessee Gas"). According to the terms of the Agreement, the Equalization Payment was to "equalize the economic benefit conferred by [the negotiated rate agreement between Tennessee Gas and Plaintiff] by adjusting [Plaintiff's] fixed transportation costs in the form of a payment by [Defendants] to [Plaintiff]". The Agreement was conditioned upon the issuance by the Federal Energy Regulatory Commission ("FERC") of orders approving the negotiated rate agreements between Plaintiff and Tennessee Gas and between Defendants and Tennessee Gas. The parties agree that the orders approving the negotiated rate agreements were entered by FERC on July 1, 2002 and August 2, 2002.

Plaintiff rejected its negotiated rate agreement with Tennessee Gas as part of its Chapter 11 proceeding as of September 5, 2003. Plaintiff contends that the rejection of its negotiated rate

agreement with Tennessee Gas had no effect on Defendants' obligations under the Agreement, and that Defendants' are liable for the remaining payments due under the Agreement. Defendants dispute this argument in their Motion, arguing that Plaintiff's rejection of its negotiated rate agreement with Tennessee Gas eliminated the underlying purpose of the Agreement, resulting in an implied rejection of and material breach of the Agreement. Defendants' argument is based on its assumption that the Agreement and the two separate Tennessee Gas negotiated rate agreements are interrelated contracts.

In the first instance, this adversary proceeding does not involve the rejection by Plaintiff of its executory contract with Tennessee Gas, an entirely independent transaction. The rejection of the negotiated rate agreement with Tennessee Gas has no bearing upon this adversary proceeding.[1]  A review of the terms of the Agreement is useful here. The Agreement provides as follows:

> This Agreement is entered into the 28th day of June, 2002, by and between USGen New England, Inc. ("USGenNE") and Ocean State Power and Ocean State Power II ("OSP") (referred to as a "Party" or the "Parties") to govern the terms of payment from OSP to USGenNE as a result of the negotiated rate agreements entered into on or about the date hereof, between USGenNE and Tennessee Gas Pipeline Company ("Tennessee") and OSP and Tennessee.
> WHEREAS, USGenNE has entered into a negotiated rate agreement with Tennessee under which USGenNE will convert its existing transportation contracts under Rate Schedule NET-284 to a Rate Schedule FT-A contract (collectively, the "USGenNE Tennessee Agreements");
> WHEREAS, OSP has also entered into a negotiated rate agreement with Tennessee under which OSP will convert its existing transportation contracts to Rate Schedule FT-A contracts ("OSP Tennessee Agreements");
> WHEREAS, USGenNE has executed the USGenNE Tennessee

---

[1] It should be noted that Defendants continued to make monthly payments under the Agreement for at least ten months after Plaintiff's rejection of the negotiated rate agreement with Tennessee Gas, and that Defendants are wholly owned subsidiaries of TransCanada Corporation, an active participant in the main bankruptcy case.

> Agreements based in part on OSP's commitment to equalize the economic benefit conferred by the USGenNE Tennessee Agreements by adjusting USGenNE's fixed transportation costs in the form of a payment by OSP to USGenNE ("Equalization Payment"); and
> 
> WHEREAS, the Agreement will govern the amount and terms of the Equalization Payment to be paid by OSP to USGenNE.

The remainder of the contract details Defendants' obligation to Plaintiff, including the amount of the monthly installment payments and security deposit, as well as wire transfer information. The terms of the Agreement specifically provide that Defendants' "obligation to pay the Equalization Payment is subject to and conditional upon" FERC's issuance of orders approving the negotiated rate agreements with Tennessee Gas. The Agreement contains no other conditions to performance by Defendants.

The Court cannot overlook the extreme financial sophistication of the parties to this Agreement. Its terms are unambiguous and call for no further explanations. Nothing in the Agreement ties the payments to the continued performance by either party. The only condition contained in the Agreement was the issuance by FERC of orders approving the negotiated rate agreements, and the parties agree that such orders were entered by FERC in 2002. No other conclusion can be reached than that Plaintiff converted its then existing rate schedule with Tennessee Gas to the benefit of Defendants, and that Defendants agreed to pay Plaintiff $1,615,635.50 for this benefit.

Defendants argue that the underlying purpose of the Agreement was that both parties would continue performing under their separate negotiated rate agreements with Tennessee Gas. These terms are not included within the Agreement, and as the court has determined that the Agreement is unambiguous, any evidence as to the alleged purpose underlying the Agreement is barred by the parole evidence rule. "Ordinarily, parol evidence is inadmissible to vary, alter, or

contradict a contract that is complete and unambiguous."  Higgins v. Barnes, 530 A.2d 724, 726 (Md. 1987) (citation omitted).  See also Markoff v. Kreiner, 23 A.2d 19, 23 (Md. 1941) ("The reason for [the parole evidence rule] is that when contracting parties have discussed and agreed upon their obligations to each other and reduced them to writing, their written contract is more reliable as evidence than the uncertain memory of man.").  Accordingly, Plaintiff's Motion will be granted, and Defendants' Motion will be denied.

    Plaintiff's counsel shall submit an appropriate order.

cc:    Earl M. Forte, Esq.
       Leslie Polt, Esq.
       Marc Richards, Esq.
       Adam M. Spence, Esq.
       David W. Elrod, Esq.
       Office of the United States Trustee

**End of Order**